UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
TERRI R. DABNEY,

                                    Plaintiff *Pro Se*,

                                                                                    **DECISION AND ORDER**

                    - against -

                                                                                      No. 10-CV-8734 (CS)

CHRISTMAS TREE SHOPS and BED BATH & BEYOND,

                                    Defendants.
-----------------------------------------------------------------------x

Appearances:
Terri R. Dabney
Buffalo, New York
*Plaintiff* Pro Se

Greg Riolo
Michael L. Abitabilo
Jackson Lewis LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

              Before the Court is the Motion for Summary Judgment of Defendants Christmas Tree

Shops and Bed Bath & Beyond[1] (collectively, the "Defendants"), (Doc. 40), seeking dismissal of

Plaintiff's Amended Complaint ("AC"), (Doc. 19).  For the reasons stated below, Defendants'

Motion for Summary Judgment is GRANTED.

_____

[1] The Clerk of Court is respectfully directed to amend the caption to conform to the caption on this Decision and Order.

Plaintiff alleges that Bed Bath & Beyond acquired Christmas Tree Shops in 2003, and therefore Bed Bath & Beyond should be held liable for the latter's actions under Title VII.  (Plaintiff's Opposition of Summary Judgment ("P's Opp."), (Doc. 47), 3.)  Defendants argue that there was no employer-employee relationship between Plaintiff and Bed Bath & Beyond, which is a primary element of claims under Title VII.  (Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment ("Ds' Reply Mem."), (Doc. 48), 9-10) (citing *Gulino v. N.Y. State Educ. Dep't*, 450 F.3d 361, 370 (2d Cir. 2006).)  Defendants further contend that to the extent Plaintiff is attempting to demonstrate joint liability under the "single employer" doctrine, *see Lima v. Addeco*, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009), *aff'd*, 375 F. App'x 54 (2d Cir. 2010), this attempt must fail because Plaintiff has not established centralized operations or common management between the Defendants.  (Ds' Reply Mem. 9-10.)  In light of my disposition below, I need not decide whether Bed Bath & Beyond may be held liable for Christmas Tree Shops' actions.

1

## I. Background

The following facts are set forth based on Defendants' Local Civil Rule 56.1 statement and the parties' supporting materials, and are undisputed except as noted below.[2]

Plaintiff, an African-American woman,[3] applied for Christmas Tree Shops' Office Coordinator position in or around November 2008. (Ds' 56.1 Statement ¶ 9.)[4] Ronald Baldes, Christmas Tree Shops' District Human Resources ("HR") Manager, interviewed Plaintiff in or around April 2009 and recommended that she be hired. (Riolo Aff. Ex. C ("Baldes Aff."), ¶¶ 26-27.) Allen Bartlett, Christmas Tree Shops' Operations Manager at the time, hired Plaintiff on April 24, 2009. (Ds' 56.1 Statement ¶ 10.)

As the Office Coordinator, Plaintiff was responsible for assisting management with new employee orientation and training, generating employee schedules, completing clerical tasks, and most importantly, monitoring and logging employee attendance issues. (Ds' 56.1 Statement ¶ 14.) Bartlett, Plaintiff's supervisor, reviewed and documented Plaintiff's own attendance. (Riolo Aff. Ex. D ("Bartlett Aff."), ¶¶ 9, 13.)

---

[2] Upon moving for summary judgment, Defendants gave the notice to a *pro se* plaintiff required by Local Rule 56.2. (*See* Doc. 41.) In opposing summary judgment, Plaintiff has not provided a counter-statement to Defendants' proposed statement of facts or submitted affidavits in support of her version of events. Instead, Plaintiff's opposition is composed of unsworn allegations consisting largely of a recitation of the same facts contained in the AC. (Doc. 47.) Although ordinarily a party's failure to oppose an adverse party's Rule 56.1 statement is grounds for deeming admitted all proposed statements of fact, the court has discretion to overlook failures to conform to the Local Rules, including Rule 56.1, especially where the party is *pro se*. *See, e.g.*, *Butler v. Potter*, No. 06-CV-3828, 2009 WL 804722, at *1 n.1 (E.D.N.Y. Mar. 26, 2009). (Copies of all unpublished decisions cited in this Decision and Order will be provided to Plaintiff.) Therefore, the Court will not deem Defendants' Rule 56.1 Statement admitted in its entirety; rather, the facts as set forth by Defendants will be deemed admitted only where a statement of fact in Defendants' Rule 56.1 Statement is supported by citations to admissible evidence, *see* Fed. R. Civ. P. 56(c)(1); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 363 (E.D.N.Y. 2009), and where the record does not reveal a basis for controverting the fact.

[3] Nowhere in her AC does Plaintiff allege her race. In her journal, however, which the Defendants submitted in connection with their motion, Plaintiff states that she is black. (*See* Affirmation of Greg Riolo, Esq. In Support of Defendants' Motion for Summary Judgment ("Riolo Aff"), (Doc. 43), Ex. L ("Journal"), at 3.) Because Plaintiff's Journal is not paginated, where I cite the Journal's page numbers, I am referring to the numbers found on the Electronic Case Filing ("ECF") version.

[4] "Ds' 56.1 Statement" refers to the Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment. (Doc. 42.)

Christmas Tree Shops uses an "occurrence system" to record attendance, whereby employees receive a half occurrence for arriving to work late, leaving early, or failing to clock in or out at the proper time, and a full occurrence when absent for a scheduled shift. (*Id.* Ex. H, at 1.) If an employee receives three occurrences within a three-month rolling period, an employee will receive a written warning. (*Id.* at 2.) A second written warning is given if the employee receives three more occurrences within a year of the receipt of the first written warning. (*Id.*) If an employee receives an additional three occurrences in the same year, the employee is subject to termination. (*Id.*)

Plaintiff testified that she was late one day during her first week of work, but Bartlett excused the half occurrence. (*Id.* Ex. M ("Dabney Dep."), at 80-81.) Plaintiff was also tardy and received half occurrences on June 17, 2009, August 11, 2009, and September 4, 6, 7, and 23, 2009. (*Id.* Ex. I, at 1.) Bartlett issued Plaintiff her first written warning on September 23, 2009. (Ds' 56.1 Statement ¶ 18.)[5] Plaintiff signed the written warning. (*Id.*)

After Plaintiff was employed for ninety days, she received a performance evaluation in accordance with company policy. (Baldes Aff. ¶ 28.) During her review, Baldes told Plaintiff that she needed to pay more attention to detail, prioritize her work assignments, and try to meet deadlines. (*Id.* ¶ 29.) On October 9, 2009, after several informal discussions regarding her performance, Plaintiff received a Corrective Action Notice for Unsatisfactory Job Performance (the "Corrective Action Notice"). (Bartlett Aff. ¶ 11; Riolo Aff. Ex. J.) The Corrective Action Notice addressed Plaintiff's sense of urgency with respect to her assignments, inaccuracy in her work, and difficulty meeting deadlines for assigned tasks. (Bartlett Aff. ¶ 11; Riolo Aff. Ex. J.) Plaintiff met with Scott Phleger, the store manager, and Bartlett to discuss the Corrective Action

---

[5] The warning reads, "Please be advised that as of 9/23/09 you have three [occurrences] resulting in this written warning. Further attendance occurrences may result in additional corrective action and/or termination." (Riolo Aff. Ex. I, at 1.)

Notice and how the three of them could work together to improve her performance.  (Bartlett Aff. ¶ 12.)

On October 11, 2009, Plaintiff began keeping a journal of work-related events to document allegedly unfair practices and treatment.  (*See* Journal 2.)  Plaintiff wrote multiple entries while at work, (*see id.* at 3-4), and saved the Journal on a Christmas Tree Shops computer, (Ds' 56.1 Statement ¶ 32).  She also printed out emails and checked out HR-related books from the library to help her document examples of alleged discrimination.  (Journal 2.)

Plaintiff did not punch in at the scheduled time on October 4 and 6, 2009, was tardy on October 20 and 29, 2009, and was absent on November 3, 2009.  (Ds' 56.1 Statement ¶ 20; Riolo Aff. Ex. I, at 1-2.)  As she had accumulated three additional occurrences within one year from the first written warning on September 23, 2009, she received a second written warning.[6]  (Ds' 56.1 Statement ¶ 21.)  Again, Plaintiff signed the warning.  (*Id*.)  Seemingly undeterred, Plaintiff then failed to punch in or out for a proper meal break on November 21, 2009, arrived late on December 3, 2009, and left early on December 13, 2009.  (*Id.* ¶ 23.)

In December 2009, Bartlett discovered Plaintiff's Journal and informed Baldes.  (Baldes Aff. ¶ 45.)  On December 14, 2009, Baldes and Phleger met with Plaintiff to address her concerns.[7]  (*Id.* ¶ 48.)  At the meeting, Plaintiff expressed her discontent with how Christmas Tree Shops enforced its attendance policy.  (Baldes Aff. ¶ 49.)  Plaintiff also mentioned that she believed Baldes had treated a disabled job applicant unfairly.  (*Id.* ¶ 50.)  Plaintiff alleges that Baldes responded to her criticisms by saying that if she was not preoccupied documenting

---

[6] The second warning states, "Please be advised that as of 11/3/09 you have three [occurrences] resulting in this written warning.  Further attendance occurrences may result in additional corrective action and/or termination." (Ds' 56.1 Statement ¶ 22.)

[7] Ds' 56.1 Statement indicates that the meeting with Plaintiff was with Baldes and Barlett, not Phleger.  (Ds' 56. Statement ¶ 33.)

allegedly discriminatory practices, she would be better at her job. (Dabney Dep. 121.) Baldes informed Plaintiff of the various avenues she could use to express employment-related concerns, which included speaking to the store manager, Baldes, the District Manager, or someone at Christmas Tree Shops' toll-free employee relations hotline. (Ds' 56.1 Statement ¶ 35; Baldes Aff. ¶ 52.)

Following the meeting, Plaintiff was absent on December 26, 2009 and late on January 1, 2010. (Ds' 56.1 Statement ¶ 23.) Bartlett and Baldes excused the half occurrence on January 1, 2010. (*Id.* at ¶ 24; Baldes Aff. ¶ 34.) Plaintiff arrived late again on January 16, 2010, (Ds' 56.1 Statement ¶ 25), and after reviewing her attendance record and prior written warnings, Baldes concluded that Plaintiff had accumulated six more occurrences within one year of the first written warning and therefore termination was in accordance with the attendance policy, (Baldes Aff. ¶¶ 36-37).

Accordingly, Plaintiff was terminated on January 21, 2010. (Ds' 56.1 Statement ¶ 25.) Plaintiff called Baldes the following day because she believed she only had seven and a half occurrences at the time she was terminated,[8] but Baldes assured Plaintiff that he had reviewed her attendance record and she had received nine. (Baldes Aff. ¶¶ 39-40.) Plaintiff mentioned nothing about discrimination or retaliation during this conversation. (*Id.* ¶ 43.) Jacqueline Williams, a white female over the age of fifty, replaced Plaintiff as Office Coordinator. (Baldes Aff. ¶ 44; *see* Dabney Dep. 132.)

Plaintiff now brings claims for gender and race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; a claim for age discrimination and retaliation under the Age Discrimination in Employment Act of 1967

---

[8] In a journal entry dated November 2, 2009, (Journal 3), Plaintiff estimated that she had accumulated approximately eight occurrences. Thereafter, she incorrectly punched twice, left early once, was absent once, and was late three times.

("ADEA"), 29 U.S.C. § 621 *et seq.*; claims for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq.*; a claim for hostile work environment under Title VII; and claims for race, gender, and age discrimination and retaliation pursuant to the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296.  (*See* AC ¶ 6.D.)

## II.  Discussion

### A. *Summary Judgment Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v.*

*Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the

motion, it "must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R.

Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d

Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of

fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed

for purposes of the motion" or "grant summary judgment if the motion and supporting materials

– including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ.

P. 56(e)(2), (3).

Although summary judgment should be used "sparingly" where the material issue

concerns an employer's intent, motivation, or state of mind, "[a] plaintiff must nevertheless offer

concrete evidence from which a reasonable juror could return a verdict in his favor and is not

entitled to a trial simply because the determinative issue focuses upon the defendant's state of

mind."  *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation and internal

quotation marks omitted).  Moreover, summary judgment may be appropriate where the plaintiff

has submitted only conclusory allegations of discrimination.  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

*Pro se* parties are entitled to "extra consideration" on summary judgment motions, *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (internal quotation marks omitted), and submissions of *pro se* parties "must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (emphasis and internal quotation marks omitted).  Even *pro se* litigants, however, "must present the court with more than a scintilla of evidence demonstrating the validity of their cause."  *O'Connor v. Viacom Inc./ Viacom Int'l Inc.*, No. 93-CV-2399, 1996 WL 194299, at *3 (S.D.N.Y. Apr. 23, 1996) (internal quotation marks omitted), *aff'd*, 104 F.3d 356 (2d Cir. 1996).

B.  *Analysis*

1.  Discrimination Claims

Plaintiff brings claims under Title VII, the ADEA, and the NYSHRL, alleging that her termination was the result of discrimination based on race, gender, and age.[9]  (P's Opp. 6-7.) Defendants argue that Plaintiff has failed to prove a *prima facie* case of discrimination because she was terminated in accordance with Christmas Tree Shops' written attendance policy.  (Ds' Mem. 6-8.)[10]

---

[9] Plaintiff's AC alleges that Defendants discriminated against her based on race, but it does not include any specific details concerning Defendants' alleged discriminatory conduct.  (*See* AC ¶ 6.D.)  Plaintiff's opposition, however, does allege with more specificity her claim for racial discrimination.  Although "[g]enerally, courts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment," *Mahmud v. Kaufman*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009), because Plaintiff is *pro se* and she did – albeit conclusorily – allege in her AC that she was discriminated against based on race, I will consider the allegations in resolving Defendants' motion.

[10] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment. (Doc. 44.)

Plaintiff's claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.[11]  A plaintiff must first establish a *prima facie* case, which gives rise to a presumption of discrimination.  *See Terry v. Ashcroft,* 336 F.3d 128, 137-38 (2d Cir. 2003).  If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the articulated justification is in fact a pretext for discrimination.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  "The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  *Id.* (alterations and internal quotation marks omitted).  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  *Id.*  The ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Under the ADEA, the final stage is different.  The plaintiff must show not only that the defendant discriminated on the basis of age, but also that age discrimination was the "but-for" cause of the adverse action, and not merely one of the motivating factors.  *Gross*, 557 U.S. at 180; *accord Gorzynski*, 596 F.3d at 106.

---

[11] This framework applies to Title VII, ADEA, and NYSHRL claims.  *See, e.g.*, *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (summary order) (applying framework to Title VII, ADEA, and NYSHRL claims); *see also Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (notwithstanding Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), this Circuit has continued to apply *McDonnell Douglas* burden-shifting framework to ADEA claims); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 570-71 (S.D.N.Y. 2010) (applying *McDonnell Douglas* burden-shifting framework to ADEA claims after *Gross*).

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Similarly, it is a violation of the ADEA for an employer to "discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).[12]  To make out a *prima facie* case of discrimination under either statute, a plaintiff must show that:  (1) she is a member of a protected class or age group; (2) she was qualified to perform the job in question; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination based on membership in the protected class.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000); *Mattera*, 740 F. Supp. 2d at 571.  Defendants here challenge the fourth requirement, arguing that Plaintiff has not made out a *prima facie* case because she has offered no evidence, direct or circumstantial, suggesting that anyone associated with the decision to terminate Plaintiff harbored discriminatory animus.  Defendants are correct as to the claims of age and gender discrimination, but not as to race discrimination.

As to her race discrimination claim, Plaintiff contends other employees indicated that Christmas Tree Shops treats black employees differently than white employees.  (P's Opp. 6.) The alleged comments must be disregarded because Plaintiff has provided no admissible evidence that they are true.  It is well settled that the evidence considered in connection with a summary judgment motion must be admissible at trial.  *See* Fed. R. Civ. P. 56(c); *Major League Baseball Props.*, 542 F.3d at 310; *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Plaintiff here offers only inadmissible hearsay:  that some of her co-workers expressed to her the opinion that Christmas Tree Shops discriminated.  *See* Fed. R. Evid. 801(c), 802.  But there is no

---

[12] Plaintiff has not alleged her age, but because Defendants do not contest that she is a member of a protected class for the purposes of this motion, (*see* Ds' Mem. 6), I assume that she is over the age of 40, the minimum age protected by the ADEA, *see Terry*, 335 F.3d at 138.

evidence of the truth of these statements that I can consider.  No first-hand or even second-hand specifics of any such conduct are provided.   It is well-settled, however, that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice" to establish the required inference of discrimination at the *prima facie* stage.  *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).  Thus, Plaintiff's replacement by Williams, who is white, is sufficient to make out a *prima facie* case of racial discrimination.

Regarding her gender discrimination claim, Plaintiff alleges that while meeting with Phleger in his office, she began crying and tried to close the office door to discuss a matter privately, but he opened the door and indicated that he was uncomfortable being in the office alone with her and wanted somebody else to join them.  (AC ¶ 4.)  It is not clear how Phleger's actions could be perceived as gender discrimination, as even Plaintiff acknowledges that Phleger's behavior merely suggests a concern – unfounded or not – that being alone in his office with an agitated woman could give rise to a sexual harassment claim against him.  (*Id.*)  Moreover, Plaintiff undermines her claim by acknowledging that Phleger had previously met with several women in his office with the door closed, suggesting that his actions were in no way motivated by Plaintiff's gender.  (*Id.*; Dabney Dep. 131-32.)  Indeed, his conduct is completely consistent with discomfort over an employee who has become emotional.  Finally, Christmas Tree Shops replaced Plaintiff with another woman, further weakening her claim of gender discrimination.  *See Jean-Gilles v. Cnty. of Rockland*, 195 F. Supp. 2d 528, 533 (S.D.N.Y. 2002) (racial discrimination claim weakened when one minority was replaced with another minority).

Finally, as to her age discrimination claim, Plaintiff contends that her co-worker, Natasha Edwards, told Plaintiff that Edwards was required to do more tasks than an older employee even though they both had the same title and job responsibilities.  (AC ¶ 5.)  Plaintiff's claim fails for

several reasons.  Principally, the ADEA does not prohibit so-called "reverse age discrimination." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("We see the text, structure, purpose, and history of the ADEA, along with its relationship to other federal statutes, as showing that the statute does not mean to stop an employer from favoring an older employee over a younger one.").  Even if Plaintiff's claim were viable under the ADEA, the alleged comment is hearsay and, as discussed above, cannot be considered in resolving this motion.  *See* Fed. R. Civ. P. 56(c); *Major League Baseball Props.*, 542 F.3d at 310; *Raskin*, 125 F.3d at 66. Finally, even if it could be considered, it has nothing to do with Plaintiff.

Aside from her replacement by a white person, there is simply nothing connecting Plaintiff's membership in any protected class to her termination.[13]  Even assuming that Plaintiff could establish a *prima facie* case as to all of her claims, Christmas Tree Shops has met its burden at the second stage of the analysis in that it has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff – namely, her violation of the attendance policy.  *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (employer's obligation at second step of *McDonnell Douglas* test is to articulate a reason for termination that, if believed, would support finding that unlawful discrimination was not the reason for the adverse employment action). Further, Defendants have produced documentary evidence supporting the existence of the legitimate, non-discriminatory reason they have advanced.  *See Rush v. McDonald's Corp.*, 966

---

[13] It appears that the six half-occurrences leading to the first warning did not fall within a three-month period, but rather fell within a three-month-and-six-day period.  There is no evidence that Bartlett, Plaintiff, or anyone else noticed the discrepancy.  Assuming that the first warning should not, under the policy, have been issued until Plaintiff's next lateness two weeks later on October 4, 2009, this fact is of no moment in this case.  While deviation from company policy can give rise to an inference of discriminatory intent, *see Eaton v. Coca-Cola Co.*, No. 06-CV-1664, 2010 WL 2836737, at *11-12 (D. Conn. July 19, 2010), such an inference is not warranted here, where the same employer in the same time frame also deviated from the policy in Plaintiff's favor.  Further, there is no evidence that discrimination, as opposed to a simple mistake, accounts for the error.  Finally, regardless of whether the warning was justified at that time, all indications are that Bartlett (and Plaintiff) *believed* that it was justified.  As discussed below, even if the error gave rise to an inference of discrimination, Plaintiff has not shown that Defendants' belief that Plaintiff had repeatedly violated its attendance policy was pretextual.

F.2d 1104, 1117 (7th Cir. 1992) (summary judgment properly granted on Title VII claim, despite allegations of discriminatory remarks, where employer demonstrated serious violations of attendance policy and no nexus between remarks and termination); *Jones v. Gov't Emps. Ins. Co.*, No. 04-CV-3492, 2006 WL 1229136, at *8 (E.D.N.Y. May 8, 2006) (employee failed to show inference of discrimination where there was long and well-documented history of attendance violations).[14]

The question accordingly arises as to whether Plaintiff has produced evidence suggesting that this reason was false – in other words, that in terminating Plaintiff, Defendants did not genuinely believe that Plaintiff had violated the attendance policy, but rather acted for some other reason. The record reveals no such evidence.[15] Although Plaintiff's replacement by a white employee was enough evidence to get her past the *prima facie* stage, without more a reasonable jury could not find that Defendants' nondiscriminatory reason for terminating her employment was pretextual. *See Farina v. Branford Bd. of Educ.*, No. 09-CV-49, 2010 WL 3829160, at *6 (D. Conn. Sept. 23, 2010) (replacement by someone outside class is not sufficient

---

[14] To rebut Defendants' contention that Plaintiff was terminated after she accumulated nine occurrences, Plaintiff argues only that Bartlett or a Bed Bath & Beyond administrator could have altered the attendance records to support Defendants' case. (P's Opp. 5.) She presents no evidence that such a thing occurred, nor does she even point to anything in the records produced by Defendants that she asserts is inaccurate. Her allegations are wholly unsubstantiated, conclusory, and insufficient to demonstrate that Defendants' reason for her termination is pretext. *See Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 387 (S.D.N.Y. 2003) ("Conclusory statements . . . are insufficient to defeat a motion for summary judgment."), *aff'd*, 411 F.3d 69 (2d Cir. 2005).

[15] Plaintiff contends that the attendance policy was not applied equally to Christmas Tree Shops' employees. (*See* AC 2-3 ("Statement of Claim"); Journal 6 ("If you are good with a certain manager, your occurrences are somehow will [*sic*] magically be reduced because a manager, most likely the one you are in good with will excuse you.").) Plaintiff, however, admits that she, too, was a beneficiary of the managers' discretion to excuse an occurrence more than once, (Dabney Dep. 80-81; Ds' 56.1 Statement ¶ 24), and does not provide evidence to support her allegation that the policy was administered unequally for any impermissible reason. Indeed, Plaintiff concedes that a manager removed an occurrence for both a man and a woman at the store. (*See* Journal 6 (noting that the manager on duty approved a day off for Stephanie and Antonio).) "Title VII does not prohibit all arbitrary employment practices. Rather, it only prohibits discrimination . . . stemming from a plaintiff's race, color, religion, sex, or national origin." *Giovelli v. LA Fitness, Inc.*, No. 10-CV-298, 2010 WL 415289, at *2 (E.D.N.Y. Jan. 28, 2010) (citation and internal quotation marks omitted).

to show pretext), *aff'd*, 458 F. App'x 13 (2d Cir. 2011); *O'Sullivan v. N.Y. Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) (same).

Furthermore, the "same-actor inference" undermines Plaintiff's claim for discrimination. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 138 (2d Cir. 2000) (internal quotation marks omitted). Where the termination occurs within a relatively short time after the hiring – as it did here – there is a significant inference that racial animus was not a motivating factor in the employment decision. *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) (inference strong where less than two years between hiring and firing); *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (inference applied for termination less than two years after hire); *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (less than six months provides for strong inference). As Baldes decided to terminate Plaintiff only thirteen months after he hired her, there is a strong inference suggesting that racial discrimination did not play a role in his employment decision.

It is well settled that courts in discrimination cases should not serve as "super-personnel departments," reviewing employer disciplinary decisions. *See Ghent v. Moore*, 324 F. App'x 55, 57 (2d Cir. 2009) (summary order); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a] [c]ourt conclude that a reasonable trier of fact could find that it is pretextual." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) (summary order). The trier of fact could not so conclude on this record.

Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's claims for discrimination under Title VII, the ADEA, and the NYSHRL.

2.   Retaliation Claim

Plaintiff brings claims under Title VII, the ADEA, and the NYSHRL, alleging that Christmas Tree Shops terminated her in retaliation for her documentation of employment discrimination and her potential to act as a whistle-blower concerning the store's discriminatory practices.  (AC ¶ 1.)  Title VII prohibits the firing of employees in retaliation for their opposition to discriminatory practices.  *See* 42 U.S.C. § 2000e-3(a).  Likewise, the ADEA prohibits retaliation.  *See Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008).

Plaintiff's claims for retaliation are also analyzed under the *McDonnell Douglas* burden-shifting framework discussed above.  *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177-78 (2d Cir. 1996) (analyzing Title VII and NYSHRL retaliation claims under the same standard). To make out a *prima facie* case of retaliation under any of the statutes, *see Terry*, 336 F.3d at 141 (same standards apply to retaliation claims under Title VII and ADEA), a plaintiff must establish that:  "(1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and her adverse employment action."  *Dixon*, 416 F. App'x at 110.  As with direct discrimination under the ADEA, the Supreme Court recently held that this final step of the retaliation analysis under Title VII requires the plaintiff to show "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Defendants assert that Plaintiff has not established that she was engaged in a protected activity because the AC and her opposition to the Motion merely allege that she *could have*

reported the alleged discrimination to the Equal Employment Opportunity Commission ("EEOC") or another third party, not that she actually did file a complaint.  (Ds' Mem. 10.) Plaintiff conceded that she never filed a formal complaint with an agency or with her employer before her termination.  (Dabney Dep. 107.)  The mere possibility that an employee may complain, without any threat to do so, is not a recognized protected activity.  *See McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 534 (2d Cir. 2009) (finding plaintiff did not engage in protected activity where he never explicitly complained about discrimination).

Defendants further contend that Plaintiff's Journal is also not a protected activity.  (Ds' Mem. 12.)  Although Title VII protects more than "the filing of formal charges of discrimination," *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990), it does not protect the kind of behavior in which Plaintiff was engaged.  Plaintiff has not alleged that she sent the Journal to anyone inside or outside of Christmas Tree Shops, used it to critique the company in any way, or raised with anyone at the company the issues described in it.[16]  Rather, it appears as though Plaintiff was keeping the Journal for herself in the event she ever decided to file any formal complaint or was fired.  (*See* AC ¶ 1 ("I documented my dealings with management and the other employees.  I felt it could be necessary to have these notes in case I was terminated for some unlawful or unfair reason . . . .").)  Defendants only became aware of the Journal when Bartlett discovered it on a workplace computer, not when Plaintiff brought a complaint to his attention or to the attention of anyone else at the company.  *See Sumner*, 899

---

[16] The only incident of which Plaintiff appears to have complained was Phleger's refusal to meet alone with her in his office with the door closed.  (Journal 3.)  Plaintiff's complaint to Baldes that she believed Phleger thought she would "go postal," however, is not sufficient to put her employer on notice that she was complaining about unfair treatment based on her race, gender, or age.  *See Dinice-Allen v. Yale-New Haven Hosp.*, No. 06-CV-675, 2008 WL 160261, at *4 (D. Conn. Jan. 10, 2008) ("To be a protected activity, complaints must alert the employer to the specific unlawful conduct complained of.  Assertion of unfair treatment must clearly be noted as due to the target being a member of a protected class.  Conduct described as discriminatory, without specificity[,] does not qualify it as protected activity.") (internal citation omitted).

F.2d at 209 (informal protests of discriminatory employment practices protected under Title VII

include "making complaints to management, writing critical letters to customers, protesting

against discrimination by industry or by society in general, and expressing support of co-workers

who have filed formal charges"); *see also McDowell*, 307 F. App'x at 534 (no protected activity

where plaintiff did not explicitly complain about discrimination).  Moreover, the majority of the

Journal does not complain about unfair treatment based on Plaintiff's membership in a protected

class, but "merely unfair treatment generally," which is insufficient to demonstrate a protected

activity for the purposes of Title VII.  *Cf. Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289,

308-09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is

complaining of unfair treatment due to his membership in a protected class and that he is not

complaining merely of unfair treatment generally.").  Further, Plaintiff does not dispute that upon

learning of the Journal, Christmas Tree Shops' managers met with her and encouraged her to use

any of the several available avenues to communicate any workplace-related concerns, and that

she declined to provide details about any alleged instances of race, sex, or age discrimination.

(Baldes Aff. ¶¶ 48-52.)

        In any event, even if Plaintiff could prove that she participated in a protected activity, she

cannot demonstrate the requisite causal nexus.  In general, in the absence of direct evidence, the

causal connection "can be established indirectly by showing that the protected activity was

closely followed in time by the adverse action."  *Manoharan v. Columbia Univ. Coll. of*

*Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).  Bartlett discovered Plaintiff's Journal

prior to the December 14, 2009 meeting, approximately five weeks prior to her termination on

January 21, 2010.  (Baldes Aff. ¶ 45; Ds' 56.1 Statement ¶ 25.)  In a vacuum, this temporal

proximity might support that a causal nexus existed between the Journal's discovery and

Plaintiff's termination.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 720-21 (2d Cir. 2001) (one month between engaging in protected activity and adverse employment action sufficient to show causal connection); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (causal connection evidenced where employee's termination came less than two months after she filed complaint with management).  Before the Journal was discovered, however, Plaintiff had already received two written warnings and a Corrective Action Notice.  (Ds' 56.1 Statement ¶¶ 15, 18, 21, 33.)  Furthermore, even after Barlett and Baldes found the Journal, they excused Plaintiff's half occurrence knowing it would otherwise lead to her termination.  (Baldes Aff. ¶ 34.)  Although temporal proximity can sometimes demonstrate a causal nexus, where (as here) the termination was ultimately the product "of an extensive period of progressive discipline" that began when Plaintiff received her first written warning three months before the Journal's discovery, a claim for retaliation cannot be maintained.  *See Slattery*, 248 F.3d at 95 ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Moreover, even if Plaintiff had alleged a sufficient connection to establish a *prima facie* case, she has, as discussed above, offered no evidence to suggest that Defendants' stated reasons for Plaintiff's termination were a pretext for retaliation.  *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more, . . . temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext.").

Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's claims for retaliation under Title VII, the ADEA, and the NYSHRL.

3.  <u>Disability Claims</u>

Plaintiff alleges that Christmas Tree Shops violated the ADA and Section 504 of the

when Bartlett chose not to hire an applicant because he was disabled, even though he was

allegedly qualified for the position.  (AC ¶ 6; P's Opp. 6-7.)

Claims under the ADA and Section 504 may be analyzed in tandem.  *See Rodriguez v.*

*City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999).  To sufficiently allege a claim for disability

discrimination, a plaintiff must show, among other things, that she has a disability as defined by

the statutes.  *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 146-47 (2d Cir. 2002).  A person with a

disability is defined as someone who has "a physical or mental impairment that substantially

limits one or more major life activities of the individual" or is "regarded as having such an

impairment."  42 U.S.C. § 12102(1)(A), (C).

Plaintiff's claim for disability discrimination is based entirely on the incident between

Bartlett and the disabled job applicant.  Plaintiff has failed to allege any facts suggesting that she

suffers from a physical or mental impairment, has been regarded as having such an impairment,

or suffered any adverse employment action based on a real or perceived disability.  Accordingly,

Plaintiff's claims for disability discrimination under the ADA and Section 504 must be

dismissed.

4.  <u>Sexual Harassment</u>

 "A plaintiff seeking relief against an employer for sexual harassment in the work place

can proceed under two theories:  *quid pro quo* harassment and a hostile work environment."

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998).  Plaintiff alleges that in 2009,

another female employee complained to her that Jose Plaza, a store manager, occasionally made

offensive remarks about female customers and used "ridiculous" language in the store's back

room.  (AC ¶ 3.)  Although Plaintiff does not specify under which theory she is proceeding, her claim is properly construed as one for a hostile work environment:  she cannot be alleging *quid pro quo* harassment because she has not alleged that Plaza did anything to her.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In order to make out a *prima facie* case for hostile work environment, a plaintiff must show that she is a member of a protected class and:  "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Smith v. New Venture Gear, Inc.*, 320 F. App'x 33, 37 (2d Cir. 2009) (summary order) (internal quotation marks omitted).

 a.  Hostile Work Environment[17]

To establish the first element, a plaintiff must come forward with "evidence not only that [she] subjectively perceived the environment to be hostile or abusive," but also that an objectively reasonable employee would perceive it to be hostile as well.  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)); *see Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 186 (S.D.N.Y. 2004).  Furthermore, "[a] plaintiff must also demonstrate that she was subjected to the hostility because

---

[17] Plaintiff also brings a hostile work environment claim based on an atmosphere of fear, pressure, and stress in the workplace.  (AC ¶ 2; P's Opp. 7.)  Plaintiff alleges, among other things, that she and other employees were "tired and stressed" during the work week; she was "constantly being interrupted" while being trained; and HR employees at other Christmas Tree Shops locations did not do all the work that Plaintiff and her co-workers were required to do.  (AC ¶ 2.)  Title VII, however, only makes it unlawful employment practice to discriminate against an individual on the basis of race, color, religion, sex, or national origin, *see* 42 U.S.C. § 2000e-2(a)(1), and Plaintiff has not alleged that any of the stress or pressure she felt at work stemmed from discriminatory behavior of that nature.  Title VII "does not set forth a general civility code for the American workplace."  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 55, 68 (2006) (internal quotation marks omitted).  "Simply put, animosity on the job is not actionable . . . ."  *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 298 (2004).

of her membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

"To decide whether the [hostile work environment] threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) ("In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (internal quotation marks omitted). "Pervasive" harassment is harassment that is "more than episodic," and instead, "continuous and concerted." *Hayut*, 352 F.3d at 745. As the Supreme Court has stated, "mere utterance of a[n] . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (first alteration in original) (citation and internal quotation marks omitted). "For sexist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of sexual enmity." *Dobrich v. Gen. Dynamics Corp., Elec. Boat Div.*, 40 F. Supp. 2d 90, 99 (D. Conn. 1999) (alternations and internal quotation marks omitted). "The environment," however, "need not be unendurable or intolerable." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted). "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (internal quotation marks omitted). Finally, a "plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a

21

sufficient combination of these elements, to have altered her working conditions.  *Costello v.*

*N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 650, 673 (S.D.N.Y. 2011) (emphases in original)

(internal quotation marks omitted).

"[T]he Second Circuit has cautioned [that] the existence of a hostile work environment is

a mixed question of law and fact.  These kinds of questions are especially well-suited for jury

determination and summary judgment may be granted only when reasonable minds could not

differ on the issue."  *Hill v. Taconic Developmental Disabilities Servs. Office*, 181 F. Supp. 2d

303, 321 (S.D.N.Y.) (citation and internal quotation marks omitted), *vacated on other grounds*,

57 F. App'x 9 (2d Cir. 2002).  Nevertheless, summary judgment is appropriate where the

"evidence does not rise to the level of severity or pervasiveness needed to support a hostile work

environment claim."  *Smith*, 319 F. App'x at 56.

Plaintiff's allegations of sexual harassment arise from her female co-worker's opinion

that Plaza and other back-room employees used "ridiculous" language and that Plaza made

inappropriate remarks to other back-room employees about the looks of female customers, in

addition to one instance in which Plaintiff heard Plaza make a comment about a female

employee.  (AC ¶ 3; Dabney Dep. 94-95.)[18]  Defendants argue that even if Plaza made

inappropriate statements, Plaintiff has merely alleged a few innocuous incidents of inappropriate

behavior – and has only provided specific information about one – which, as a matter of law,

cannot be found objectively severe or pervasive.  (Ds' Mem. 17-18.)

First, the record contains no evidence of the events allegedly witnessed by Plaintiff's co-

worker.  Plaintiff has provided only hearsay – that the co-worker said these things happened.  *See*

_____

[18] According to Plaintiff, she called an employee to come in to work and the employee, who was female, did not want to come.  Plaza said something like "I bet . . . she would work for me."  (Dabney Dep. 94.)  Although it is not clear how that "could be looked at as harassment," (*id.*), I will assume for the sake of argument that there was some sexual innuendo to the remark.

Fed. R. Evid. 801(c), 802.  There is thus no admissible evidence that these things in fact

happened.  *See Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 190 n.8 (2d Cir. 2001).

Accordingly, I may consider only the fact that the co-worker's statements were made, and what

effect these statements might have had on Plaintiff, whether or not they were true.  Evidence of

harassment directed at other co-workers or occurring outside Plaintiff's presence can be relevant

to a hostile work environment claim, *id.* at 190, but it must occur in the same work environment

as Plaintiff and adversely affect the terms and conditions of her employment, *see id.* at 189.

"Title VII's prohibition against hostile work environment discrimination affords no claim to a

person who experiences it by hearsay."  *Id.* at 182.  Because the conduct reported by the co-

worker occurred in the "backroom or pre-processing area," (AC ¶ 3), not in the office area where

Plaintiff worked, and because she learned of it only through hearsay, it cannot be said that that

conduct adversely affected the terms and conditions of Plaintiff's employment.

Even putting that issue aside, Plaza's remarks about female customers may be

inappropriate, but his "occasional use of sexist language does not create a hostile work

environment."  *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-CV-5109, 2007 WL 1149979,

at *17 (S.D.N.Y. Apr. 18, 2007) (collecting cases), *aff'd*, 303 F. App'x 942 (2d Cir. 2008); *see*

*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (no hostile work environment

where supervisor made, on occasion, racist remarks, including one directed at plaintiff); *Garone*

*v. United Parcel Serv., Inc.*, 436 F. Supp. 2d 448, 469 (E.D.N.Y. 2006) (supervisor's use of

phrases "office bitch," "brooklyn bimbettes," and "cat fight" not hostile work environment)

(internal quotation marks omitted), *aff'd*, 254 F. App'x 108 (2d Cir. 2007); *Diaz v. Weill Med.*

*Ctr. of Cornell Univ.*, No. 02-CV-7380, 2004 WL 285947, at *18 (S.D.N.Y. Feb. 13, 2004)

("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the terms and conditions of employment.") (internal quotation marks omitted), *aff'd*, 138 F. App'x 362 (2d Cir. 2005).[19] Nor is there evidence – or even an allegation – that anything Plaza did affected Plaintiff at the time. *See Harris*, 510 U.S. at 21-22 ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.").

      b.  <u>Imputation of Knowledge to the Employer</u>

Even if Plaintiff had set forth facts sufficient to demonstrate a hostile work environment, it would be improper to impute liability to Defendants. Although an employer is always strictly liable for *quid pro quo* harassment, a plaintiff seeking to recover from an employer for a hostile work environment must demonstrate some specific basis to hold the employer liable for the conduct of its employees. *See Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994).

An employer's liability under Title VII for workplace harassment depends on the status of the harasser. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* If, on the other hand, the harassing employee is the victim's supervisor, "different rules apply." *Id.* The Supreme Court recently made clear that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he . . . is empowered by the employer to take tangible employment actions against the victim." *Id.* A "tangible employment action" is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

---

[19] This case can be contrasted with *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997), where the plaintiff alleged that she had been harassed so many times that she "lost count," but could recall the exact dates and circumstances of only a few incidents of harassment. *Id.* at 631 (internal quotation marks omitted). Here, Plaintiff witnessed only one incident of allegedly inappropriate behavior, and received reports of the same twice, over a thirteen-month period. (Dabney Dep. 93-95.)

decision causing a significant change in benefits." *Id.* at 2442 (internal quotation marks omitted).

Plaintiff has not even alleged any facts suggesting that Plaza, as the manager on duty, "directed [Plaintiff's] day-to-day activities" in the HR office, let alone that he had the authority to significantly change Plaintiff's employment status. Therefore, under Title VII, Plaza should not be classified as a supervisor. *Id.* at 2454 (finding co-worker was not a supervisor even though plaintiff called her a supervisor and her job descriptions indicated she led and directed some employees, because there was no evidence she supervised plaintiff on a day-to-day basis). Accordingly, as Plaza is properly characterized as Plaintiff's co-worker, Christmas Tree Shops is only liable for his actions under Title VII "if it was negligent in controlling working conditions." *Id.* at 2439.

Plaintiff must therefore demonstrate that "the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (emphasis and internal quotation marks omitted). "[O]nce an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it." *Torres*, 116 F.3d at 636 (internal quotation marks omitted). Notice accrues when the employer "knew or should have known of the conduct." *Murray*, 57 F.3d at 249 (citing 29 C.F.R. § 1604.11(d)) (internal quotation marks omitted).

Christmas Tree Shops maintains an Equal Employment Opportunity and Diversity Policy and a Mutual Respect/Anti-Harassment Policy, which prohibit unlawful discrimination and/or harassment, provide employees with several avenues of complaint, and protect employees from retaliation if they report or complain about a violation of the policy. (Baldes Aff. ¶ 7; *see* Riolo

Aff. Exs. E-G.)  At the December 14, 2009 meeting Plaintiff had with Baldes and Bartlett, Baldes personally informed Plaintiff of the various avenues by which she could express any employment-related concerns.  (Baldes Aff. ¶ 52.)  Plaintiff does not contend that she was unaware of Christmas Tree Shops' policies, and she does not dispute that Defendants provided a reasonable avenue for complaint.  *See Arias v. Nasdaq/Amex Mkt. Grp.*. No. 00-CV-9827, 2003 WL 354978, at *7-8 (S.D.N.Y. Feb. 18, 2003) (finding reasonable avenues for complaint where employer had a written policy prohibiting illegal harassment and an "open door policy," and employees were encouraged to report harassment to a manager, supervisor, or Human Resources employee).

Furthermore, Plaintiff cannot allege that Christmas Tree Shops had actual knowledge of the harassment because she conceded that she did not tell anyone about the incidents with Plaza. (Dabney Dep. 95 ("Q:  After [your co-worker] told you about this behavior that [Plaza] was engaging in what, if anything, did you do?  A:  I did not do anything.  Q:  Did you tell anybody about what [your co-worker] had told you?  A:  No, I did not.").)  Nor has Plaintiff alleged any facts suggesting that Christmas Tree Shops had constructive notice of the harassment.  *See Murray*, 57 F.3d at 250-51 (plaintiff's allegations that other students knew of harassment did not support inference that any university official had constructive notice).[20]

Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's sexual harassment claim.

---

[20] Even if Plaza were regarded as Plaintiff's supervisor, the employer would be strictly liable only if his harassment resulted in a tangible employment action.  *See Vance*, 133 S. Ct. at 2439.  Plaintiff makes no such claim.  Rather, her termination was caused by Baldes (and perhaps Bartlett).  Where no tangible action is taken by the harasser, the employer can escape liability if it establishes that it exercised reasonable care to prevent and correct any harassing behavior, and that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities the employer provided.  *Id*.  On the undisputed facts here, Defendants establish that defense, for the reasons set forth in the text.

### III. <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to all claims.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 40), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated:  July 24, 2013
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.